# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KIMBERLY M. SCHOENE**, | Case No. 3:23-cv-742-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **THE OREGON DEPARTMENT OF HUMAN SERVICES**, *et al.*, | |
| Defendants. | |

**Michael H. Simon, District Judge.**

Plaintiff and Defendants have filed a series of motions in this case. The Court resolves in this Opinion and Order Plaintiff's motion to compel[1] (ECF 64); Plaintiff's motion for leave to file a reply in support of that motion (ECF 93);[2] Defendants' motion for an order to show cause (ECF 74); Plaintiff's motion for sanctions (ECF 81); Defendants' Motion to Stay Discovery (ECF 69); Plaintiff's Motion to Stay Summary Judgment Proceedings Pending Discovery and Alternative Motion for Extension of Time to Respond to Motion for Summary Judgment (ECF 79); and Plaintiff's motion for leave to file a second amended complaint (ECF 101).

---

[1] This motion is titled "Motion for Order Regarding Defendants' Discovery and Confidentiality Violations," which the Court construes as a motion to compel.

[2] Plaintiff moved for leave to file a reply in support of her motion to compel (ECF 93). Without receiving leave from the Court, Plaintiff filed her reply (ECF 95). Defendants did not submit to the Court any objections regarding Plaintiff's motion for leave to file a reply. The Court grants *nunc pro tunc* Plaintiff's motion and considers the arguments she makes in her reply brief in resolving Plaintiff's motion to compel.

PAGE 1 – OPINION AND ORDER

## BACKGROUND

Plaintiff Kimberly Schoene sued Defendants on May 18, 2023, alleging that Defendants targeted and traumatized her after she reported to Defendant Oregon Department of Human Services ("ODHS") evidence of physical harm done to the two-year-old son of her then-partner. In her original complaint, she alleged six claims, which consisted of two violations of federal law and four violations of state law.[3] ECF 1. Plaintiff filed her First Amended Complaint ("FAC"), ECF 15, on July 11, 2023.[4] In her FAC, she brings eight claims against Defendants. Plaintiff brings federal law claims alleging: (1) deprivation of Fifth and Fourteenth Amendment due process rights, brought under 42 U.S.C. § 1983; (2) deprivation of First Amendment free speech rights, brought under § 1983; and (3) violation of the Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. § 5101, *et seq*. She brings state law claims for: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) negligence; (4) negligence per se; and (5) violation of state statutory duties while investigating Plaintiff. Defendants move for summary judgment on all claims, ECF 66.

On May 17, 2024, Plaintiff moved to compel discovery and the production of documents, ECF 52. The documents she requested largely concerned child abuse protocol and practice documents that Plaintiff contends that Hood River's Multidisciplinary Team ("Hood River MDT") was required to keep by Oregon statute. On July 24, 2024, the Court issued an Order

---

[3] Plaintiff brought constitutional claims under 42 U.S.C. § 1983 for (1) violation of Fifth and Fourteenth Amendment due process rights; and (2) violation of First Amendment free speech rights. She brought state law claims for (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) negligence; and (4) negligence per se.

[4] Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within 21 days of service. Fed. R. Civ. P. 15(a)(1). Because the Court found improper Plaintiff's service of her original complaint, the Court found that the 21-day period had not yet expired by the time Plaintiff filed her FAC. *See* ECF 16.

determining the extent to which Defendants needed to comply with Plaintiff's requests for

production. As relevant to the motions currently pending before the Court, the Court discussed

the following requests:

> **REQUEST NO. 3:** All [Department of Human Services ("DHS") or [Department of Justice ("DOJ")] documentation used in determining the factors listed in [Oregon Revised Statutes ("ORS")] 418.746(4), as reported by Hood River County MDT to DHS.
>
> . . .
>
> **REQUEST NO. 8:** All [of] Hood River County MDT's "*written protocol for immediate investigation of and notification procedures for child abuse cases*" as provided in ORS 418.747(2) for years 2018, 2019, 2020, 2021, and 2022.
>
> . . .
>
> **REQUEST NO. 10:** All DHS documentation for the "*protocols and procedures called for in this section [ORS 418.747]"* for Hood River County MDT, per ORS 418.747(4) for years 2018, 2019, 2020, 2021, and 2022.
>
> . . .
>
> **REQUEST NO. 11:** DHS Hood River's "*procedures for evaluating and reporting compliance of member agencies with the protocols and procedures required under this section [ORS 418.747]*" and the DHS "*copies of the protocols and procedures required under this section and the results of the evaluation as requested*" which are required to be submitted "*to the administrator of the Child Abuse Multidisciplinary Intervention Program*" under ORS 418.747(7) for years 2018, 2019, 2020, 2021, and 2022.
>
> . . .
>
> **REQUEST NO. 12:** DHS' copy of Hood River County's MDT's "*policies that provide for an independent review of investigation procedures of sensitive cases after completion of court actions on particular cases. The policies shall include independent citizen input. Parents of child abuse victims shall be notified of the review procedure*" provided for in ORS 418.747(8). The documents that DHS received from Hood River County MDT pursuant to ORS 418.747(8), for years 2018, 2019, 2020, 2021, and 2022.

. . .

>**REQUEST NO. 14:** All DHS Documents [that] DHS has in its
>possession, for years 2018, 2019, 2020, 2021, and 2022,
>concerning the children's advocacy centers as provided by
>ORS 418.780 – 418.800, and specifically as to DHS' role in the
>"*Regional children's advocacy center*" as defined by
>ORS 418.782(6), for the Columbia Gorge region, which is
>Columbia Gorge Children's Advocacy Center ("CGCAC"), dba
>Safespace Children's Advocacy Center of the Gorge, for CAMI
>Region 15.
>
>Previously DHS advised that CGCAC does not have a contract
>with the state; however, CGCAC is (fully or partially) funded
>through CAMI as provided in ORS chapter 418. Plaintiff is
>seeking any and all DHS materials, budgets, emails, memos, or
>other documentation that DHS prepared and/or provided to any
>entity in support of, or in any manner concerning, CGCAC's
>request for funding from CAMI or other public funding, or the
>Hood River County District Attorney's Office request for funding
>through CAMI for CGCAC, as provided in ORS 418.746 –
>ORS 418.800, on behalf of the "Multidisciplinary Team" or on
>behalf of the "Children's advocacy center."
>
>CGCAC performed five (5) different "Child Abuse Assessments"
>for [Child] in this matter (see ORS 418.782 definition of "Child
>Abuse Assessment" being a "Forensic Interview" or "Medical
>Assessment" which CGCAC conducted and which DHS relied
>upon). <u>DHS should have several reports from CGCAC in this
>matter</u>. If there are no reports or any document to/from CGCAC,
>please state so, and give the reason why no such documentation
>that should exist, does not exist (or has not been produced, or has
>been destroyed).

ECF 59 at 7-11 (emphases in original). The Court explained that Defendants must produce

documents responsive to Request Nos. 3, 8, 10, 11, and 12, "if such documents can be found

after a diligent and reasonable search." *See* ECF 60 at 7. With respect to Request No. 14,

however, the Court explained that "this request sweeps too broadly" and thus, the Court

"decline[d] to order Defendants' production of document responsive to Request No. 14 *beyond*

those that Defendants have agreed to produce." *Id.* at 11 (emphasis added).

PAGE 4 – OPINION AND ORDER

On September 24, 2024, Plaintiff filed her motion to compel, ECF 64. On October 8,

2024, Defendants filed a motion to stay discovery pending the resolution of their motion for

summary judgment. ECF 69. That same day, Defendants also filed a motion for an order to show

cause for why they should not be required to produce confidential documents to Plaintiff.

ECF 74. On October 17, 2024, Plaintiff filed a motion to stay resolution of Defendants' pending

summary judgment motion so Plaintiff could engage in further discovery. ECF 79. In her motion

to stay, Plaintiff claimed that Defendants had not produced documents responsive to the requests

listed above and those documents were necessary for Plaintiff to respond to Defendants' motion.

On October 22, 2024, Plaintiff filed a motion for sanctions based on Defendants' purported

discovery violations. ECF 81.

The Court was unable to discern from the briefing whether these documents exist and if

Defendants had produced them. Thus, on October 25, 2024, the Court ordered Defendants to file

supplemental briefing explaining (a) whether the Hood County MDT protocols outlined by

Plaintiff in her motion for sanctions exist, (b) if they do, whether Defendants had produced these

protocols and procedures to Plaintiff, and if so, requiring Defendants to identify the production

numbers, and (c) if these documents exist, but have not been produced, why not. ECF 83.

Defendants filed a supplemental brief stating that the Hood River MDT protocols did exist and

that Defendants had provided them to Plaintiff. ECF 97. In that brief, Defendants argued that

Plaintiff failed to provide a sufficient basis for why more discovery regarding these protocols is

necessary for her to respond to Defendants' summary judgment motion. Plaintiff disagreed with

Defendants' characterization of their compliance with the Court's July 24, 2024, Order. ECF 99.

**DISCUSSION**

**A.  Plaintiff's Motion to Compel**

Plaintiff's motion to compel raises two issues. First, Plaintiff asserts that Defendants improperly redacted information from the transcript of reporters' phone calls to ODHS. Second, Plaintiff asserts that Defendants have not complied with the Court's July 24, 2024, Order.

**1.  Redactions to Child Abuse Reports**

Defendants began production of discovery in this case in May 2024. Within these initial productions were Assessment Summaries of the child implicated in this case, with screening reports attached. These screening reports are produced by ODHS staff who facilitate the ODHS abuse hotline and memorialize the calls in writing. These reports contain "Report Summaries," which are the screeners' summaries of phone call conversations with all reporter identifying information—such as name, contact information, relation to the child, and relation to the alleged abuser—removed. That identifying information is produced, however, in a later section of the screening report under a section called "Confidential Reporter Information."

Some of the screening reports that Defendants produced included calls made to report Plaintiff. Seemingly inadvertently, Defendants produced at least a few of the Assessment Summaries in their entirety, without redacting "Confidential Reporter Information." After realizing they had produced unredacted Assessment Summaries, Defendants contacted Plaintiff by email in August to "claw back" the documents from production. Defendants also redacted reporter information in later productions.

Plaintiff files this motion to argue that (1) she should be able to use the unredacted versions of Defendants' initial productions and that (2) she should have access to unredacted versions of Defendants' later, redacted productions. Specifically, she seeks access to the "Confidential Reporter Information" sections in the screener reports in preparing for this case.

PAGE 6 – OPINION AND ORDER

Defendants argue that ORS § 419B.035(3) and Oregon Administrative Rules ("OAR") § 413-010-0035(9) mandate that the "identifying information," of reporters, whether implicit or explicit, must be redacted from disclosure.

Defendants' obligations relating to disclosure of reporters' identifying information are governed by ORS § 419B.035(3) and OAR § 413-010-0035(9), which explain what information about a reporter of child abuse must be redacted and under what circumstances.

ORS § 419B.035(3) states:

> (3) The Department of Human Services may make reports and records compiled under the provisions of ORS 419B.010 to 419B.050 available to any person, administrative hearings officer, court, agency, organization or other entity when the department determines that such disclosure is necessary to administer its child welfare services and is in the best interests of the affected child, or that such disclosure is necessary to investigate, prevent or treat child abuse and neglect, to protect children from abuse and neglect or for research when the Director of Human Services gives prior written approval. The Department of Human Services shall adopt rules setting forth the procedures by which it will make the disclosures authorized under this subsection or subsection (1) or (2) of this section. The name, address and other identifying information about the person who made the report may not be disclosed pursuant to this subsection and subsection (1) of this section.

OAR § 413-010-0035(9) states:

> Reporter of Abuse. The identity of the person making a report of suspected child abuse, and any identifying information about the reporting person, must be removed from the records or shielded from view before records are viewed or copied. The name, address or other identifying information may only be disclosed to a law enforcement officer or district attorney in order to complete an investigation report of child abuse.

Further, pursuant to the first provision of this rule, OAR § 413-010-0035(1), "[i]f a court order or a specific statute requires the Department to disclose information that this rule protects, the Department must disclose the information." Given that Defendants inadvertently disclosed

identifying information to Plaintiff during their productions, it appears that Plaintiff is asking for a court order, pursuant to OAR § 413-010-0035(1), that would allow Plaintiff to use that identifying information in this litigation.[5]

The Court finds that such an order is not appropriate in this situation. Plaintiff has not identified circumstances under which the *identity* of the reporter is relevant to her case, which asserts misconduct by an agency and its employees. She is not alleging that the people that reported her to ODHS acted in concert with Defendants or in some way caused Defendants to engage in the alleged conduct. She has not adequately described her need for reporters' names and identifying information in *this lawsuit*.

Plaintiff properly may access the Report Narrative portion of reports, which includes a screener's summary of the reporter's comments with identifying information about the reporter redacted. This summary includes details about the extent of the alleged abuse and the circumstances of the alleged abuse, but omits information such as the reporter's name, the reporter's contact information, and details about how the reporter got involved with the case. Therefore, contrary to Plaintiff's allegation, Defendants may not "shield everything the reporter stated to the DHS hotline." Nor does it appear that they are trying to redact or claw back the sanitized Report Narratives. Accordingly, the Court finds that Plaintiff has not overcome the presumption of privacy written into the statute and regulation. Her motion to compel is denied to the extent she requests access to the information related to the identity of the reporters.

---

[5] Plaintiff seems to offer two specific arguments. First, she argues that Defendants have "over-us[ed]" the statute and regulation by "shield[ing] not only the name and identification of the reporter (allowed by statute), but also to shield everything the reporter stated to the DHS Hotline." Second, she also appears to argue that she has a right, analogous to a criminal defendant's Sixth Amendment right to confront adverse witnesses, to know the identity of the individuals who reported her to child protective services. Plaintiff seems to seek access only to reporters' names, and not what she refers to as "Protected Personal Information," which she defines as "address, phone, social, account numbers, etc."

PAGE 8 – OPINION AND ORDER

### 2. Compliance with Requests for Production

In both this motion and her motion for sanctions, discussed below, Plaintiff argues that Defendants have not complied with her requests for production. Specifically, Plaintiff argues that Defendants did not fully comply with the Court's July 24, 2024 Order by failing to produce documents responsive to Request Nos. 8, 11, 12, 14, and "possibly" also 3 and 10. Defendants counter that they have complied with all discovery requests.

The Court first addresses Request Nos. 3, 8, 10, 11, and 12, all of which concern documentation from the Hood River MDT. Counsel for Defendants, David Hall, states upon penalty of perjury that he provided to Plaintiff:

> all documents or communications from various employees of the Hood River County ODHS office, including named defendants, child protective services caseworkers and their managers, between the years 2018 and 2022 regarding any protocols, procedures, training, or compliance related to the Hood River County Multidisciplinary Team and child abuse investigations.

Decl. of David Hall ¶ 6 (ECF 98 at 2-3). As of October 7, 2024, this production consisted of 6,432 pages of documents and includes the Hood River MDT Interagency Agreement ("Interagency Agreement"). *Id.* ¶ 7. Mr. Hall states that "this document is a copy of the MDT protocol for child abuse investigations in Hood River County active during the 2018-2022 timeframe that Plaintiff requested and that Defendants obtained after searching their records during the 2018-2022 timeframe listed in Plaintiff's [requests for production]." *Id.* ¶ 3.

Plaintiff repeatedly argues that the Interagency Agreement does not satisfy her Requests for Hood River MDT "protocol" documents. She claims that as an interagency agreement, the production by Defendants cannot be "the official Hood River County MDT protocol on child abuse as mandated by the governing statute." She observes that the document is unsigned, and suggests that it is "a draft from 2013, at best." She then argues that if the Interagency Agreement

is Defendants' only responsive document to her requests for Hood River MDT protocol documents, Defendants are not in compliance with an Oregon statute, and thus that Defendants have "admi[tted] culpability" to violating Oregon law.

The Court understands Plaintiff's arguments about the legitimacy of the Interagency Agreement and her assertion that it does not comply with Oregon law. But Defendants state that this Agreement and its accompanying productions are *all* that Defendants have in response to Plaintiff's request for production. To the extent that Plaintiff argues that these documents do not comply with Oregon law, that argument may go to the merits of Plaintiff's claim. It does not, however, relate to Defendants' compliance with Plaintiff's requests for production. Therefore, the Court does not find persuasive Plaintiff's arguments in her motion to compel that Defendants have not complied with Request Nos. 3, 8, 10, 11, and 12.

The Court turns next to Plaintiff's arguments about Request No. 14. Plaintiff requests documentation concerning CGCAC funding and CGCAC Child Abuse Assessments pertaining to the child involved in this matter. As discussed above, the Court declined to order Defendants to produce documents responsive to this request beyond what Defendants agreed to produce, which was "all responsive and relevant non-privileged documents, including MDT documents and medical assessments from CGCAC, in their custody pertaining to [the child]." *See* ECF 60 at 11. Plaintiff argues that Defendants have not fulfilled this commitment and that "[n]ot one" CGCAC medical report or assessment was produced following the Court's July 2024 Order.

Defendants do not address Request No. 14 in their response to Plaintiff's motion, ECF 71, their supplemental brief, ECF 97, or its accompanying declaration, ECF 98. Given this omission, the Court cannot discern whether Defendants have complied with the July 2024 Order. Accordingly, the Court orders Defendants to provide another supplemental brief specifically explaining the extent of their compliance with Request No. 14. Defendants must file this

supplement no later than two weeks after the date of this Order. Plaintiff may file a response within one week thereafter.

**B.  Defendants' Motion to Show Cause**

Defendants ask the Court to issue an order for Plaintiff to show cause why "numerous documents" that Defendants contend are confidential under the statute ought to nevertheless be disclosed to Plaintiff. Specifically, Defendants argue that certain child welfare records, child abuse investigation records, records of medical and mental treatment and evaluation, forensic interview records, and other documents and communications concerning services DHS staff performed on behalf of the child and the child's parents are protected by Oregon law from disclosure.

The Court denies Defendants' motion. The motion appears to be premised on email communications between Plaintiff and Defendants regarding disclosures. If, however, Plaintiff seeks in discovery documents that Defendants refuse to provide, Defendants may object to her discovery requests at *that* time. Plaintiff may then file a motion to compel the production of those documents, and the Court will *then* rule on the issue. Defendants also may file a motion for protective order. Defendants would then have the burden to show that each document it seeks to protect contains confidential or other information within the scope of Rule 26(c) of the Federal Rules of Civil Procedure and that "disclosure would cause an identifiable, significant harm." *Foltz v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (quotation marks omitted). Otherwise, there is no ripe discovery issue before the Court.

**C.  Defendants' Document Production and Plaintiff's Motion for Sanctions**

Plaintiff requests monetary sanctions and a "strict" order compelling any outstanding discovery. Defendants counter that they have complied with all discovery requests.

Rule 37 of the Federal Rules of Civil Procedure authorizes a district court to sanction a party that fails to obey a discovery order. "[A] court has discretion whether to issue sanctions, and if so, what types of sanctions to issue." *Reese v. Bryan*, 2022 WL 1265848, at *2 (D. Nev. Apr. 27, 2022) (citing *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 844 (9th Cir. 1976)). Sanctions may include the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). Alternatively, or additionally, a court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

A court should not order sanctions, however, if the noncompliant action "appears to be based on a good faith and reasonable interpretation of the court's order." *Reno Air Racing Ass'n,, Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). Indeed, "[s]ubstantial compliance with the court order is a defense to civil contempt." *In re Dual-Deck*, 10 F.3d at 695 (quotation marks omitted).

The Court finds that sanctions are not appropriate at this stage of the litigation. Plaintiff's requests generally have been broad and, in some cases, concern sensitive information that may be governed by a statute that requires confidentiality. Based on the record, any noncompliance with Plaintiff's requests appears to stem from good faith concerns about statutory requirements surrounding confidentiality or miscommunication between the parties as to which documents are responsive to which requests. Plaintiff has requested considerable discovery from Defendants, and Defendants appear to have made a good-faith effort substantially to comply. As discussed above, the Court finds that Defendants have at least substantially complied with Request Nos 3, 8, 10, 11, and 12—and thus, the majority of Plaintiff's discovery requests. As also discussed above, Defendants shall provide to the Court a supplemental brief explaining the status of production responsive to Request No. 14. The Court accordingly finds that sanctions are not appropriate at this time.

**D.  Defendants' Motion to Stay Discovery Pending Summary Judgment**

Defendants move to stay discovery pending the resolution of their summary judgment motion. In their summary judgment motion, Defendants classify Plaintiff's eight claims into three categories: Plaintiff's state law claims, Plaintiff's constitutional claims under § 1983 and Plaintiff's CAPTA claim as its own category. Defendants argue that all three categories of claims are entitled to summary judgment because the claims do not turn on issues of fact, and therefore that no additional discovery is required.

Under Rule 26(b) and 26(c) of the Federal Rules of Civil Procedure, the Court has discretion to limit the frequency and extent of discovery. *See, e.g.*, *United States ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 237 (S.D. Cal. 2015) (explaining that a court may limit discovery if, among other reasons, the burden or expense of the proposed discovery outweighs the likely benefit); *Stauffer v. Matarazzo*, 2023 WL 8096907, at *1 (D. Or. Nov. 21, 2023) ("A

PAGE 13 – OPINION AND ORDER

court has 'wide discretion' in issuing a protective order or otherwise controlling discovery.")
(quoting *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988)). Defendants state that as of
October 7, 2024, they have produced more than 6,400 documents in response to Plaintiff's
requests. Defendants argue that further discovery is unnecessary and would be unduly expensive
and burdensome. In deciding whether to grant Defendants' motion, the Court considers how
additional discovery would contribute to the resolution of summary judgment as compared to its
burden. The Court considers each category of claims separately.

### 1. Plaintiff's State Law Claims

Defendants first explain that all named Defendants are employees of Defendant ODHS, a
state agency, and were acting within the scope of their employment at all relevant times.
Defendants argue that pursuant to the Oregon Tort Claims Act ("OTCA"), the Court should
substitute the State of Oregon for the named Defendants as to each of the state law claims.
Defendants then conclude that Oregon has not consented to be sued under the OTCA in *federal*
court for Plaintiff's state law claims.

Plaintiff responds by quoting *Siegert v. Gilley*, 500 U.S. 226, 231 (1991), arguing that the
pending discovery is necessary to provide "direct evidence of illicit intent" to establish
Defendants' "improper purpose" when dealing with Plaintiff.[6] The Court notes at the outset that

---

[6] In a different motion, Plaintiff raises direct responses to Defendants' sovereign
immunity defense, arguing that the Court previously held that the State of Oregon waived
sovereign immunity through the OTCA in *Hanson v. Oregon*, 557 F. Supp. 3d 1123 (D.
Or. 2021). *See* Plaintiff's Motion to Amend First Amended Complaint Following Discovery,
ECF 101. In *Hanson*, however, the Court addressed two different aspects of immunity. The
Court first concluded that the State had waived *Eleventh Amendment sovereign immunity* by
removing the case to federal court, and thus the plaintiff could proceed with her claims under the
ADA in federal court if she could proceed with those claims in state court. *See id.* at 1128-29.
The Court next concluded that the OTCA waived *state sovereign immunity in state court* for
those claims under the ADA. *Id.* at 1129-30. Thus, because the OTCA waived Oregon's
immunity for claims under Title I and Title V of the ADA in state court, and the State had
waived its Eleventh Amendment immunity by removing the case to federal court, the plaintiff in

*Siegert v. Gilley* is a case about *qualified* immunity, not *sovereign* immunity, and thus the question of "illicit intent" does not apply to the sovereign immunity analysis. *See Siegert*, 500 U.S. at 227. The Court thus does not find Plaintiff's response persuasive.

Whether it is proper to substitute the State of Oregon for the named Defendants is entirely a legal question that the Court's interpretation of the OTCA—and not additional discovery—will answer. If substitution is proper, the subsequent question of whether the State has waived sovereign immunity also is legal, and not factual, in nature. The Supreme Court has interpreted the Eleventh Amendment generally to bar lawsuits in federal court against states and state agencies acting under the state's control. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). There are, however, exceptions to this general rule: a plaintiff may sue a state on a claim for injunctive relief to end an ongoing state violation of federal law; a state may voluntarily waive its immunity; and Congress may abrogate a state's immunity. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *Seminole Tribe of Fla. v. Florida*, 517 U.S 44, 73 (1996). The additional discovery that Plaintiff seeks by means of her requests for production—or indeed any discovery regarding the facts of her case—will not assist her in this threshold sovereign immunity inquiry.

### 2. Plaintiff's Federal Law Claims under § 1983

#### a. Due Process

Defendants argue that the Court should dismiss Plaintiff's § 1983 procedural due process claim because "Plaintiff cannot prove that Defendants violated any due process right." Sovereign immunity does not apply to § 1983 claims against individuals in their personal capacity. *See*

---

*Hanson* could proceed with her ADA claims in federal court. *Hanson* did not hold that the State of Oregon waives sovereign immunity under the OTCA in all cases, and the Court declines to extend *Hanson* so broadly.

*Hafer v. Melo*, 502 U.S. 21, 25 (1991). Defendants thus do not raise that argument. Nor do they argue that qualified immunity would apply to foreclose Plaintiff's procedural due process claim. Defendants instead assert that Plaintiff cannot demonstrate that any of Defendants' actions deprived Plaintiff of a constitutionally protected property or liberty interest.

Plaintiff responds that additional discovery is necessary for her to respond to Defendants' motion for summary judgment on this claim. She contends that additional discovery is likely to provide evidence to support her claim that Defendants did not develop protocols as required by federal law—or, if protocols existed, Defendants did not follow them during Plaintiff's investigation. This argument, however, goes to evidence about whether Defendants provided Plaintiff with a full and fair investigation or appropriate due process. It does not relate to Defendants' legal argument that Plaintiff does not have a liberty or property interest.

To prevail on a procedural due process claim, a plaintiff must establish: (1) a constitutionally protected liberty or property interest; (2) a deprivation of that interest by the government; and (3) the lack of adequate process. *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008). Thus, "[a] threshold requirement to a . . . procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994).

Defendants move for summary judgment on Plaintiff's due process claim on the grounds that Defendants' actions have not deprived Plaintiff of a constitutionally protected liberty or property interest. Plaintiff has the information about what constitutionally protected liberty or property interest she claims has been infringed by Defendants' actions, and the Court can decide the legal question about whether that claimed interest is sufficient. The Court does not see how additional discovery could help Plaintiff in articulating the liberty or property interest she claims was deprived by Defendants' actions.

PAGE 16 – OPINION AND ORDER

Defendants alternatively move that the process provided to Plaintiff was sufficient. That argument goes to Plaintiff's claim that she needs more discovery to prove the inadequacy of Defendants' process. Additional, targeted discovery, therefore, may be relevant for Plaintiff to respond to this argument, unless Defendants withdraw this argument. At this stage, Defendants have not sufficiently shown undue burden to warrant a general protective order staying all relevant discovery. If Defendants can show undue burden in responding to a particular request for production, Defendants may file a motion for a protective order.

### b.  First Amendment

Defendants argue that Plaintiff's § 1983 claim against ODHS should be barred because ODHS is not a "person" and therefore cannot be sued under § 1983. Defendants further argue that this claim cannot survive against any named Defendant because it would be barred by a two-year statute of limitations[7] or by a qualified immunity defense. As with the state law claims, the question of whether ODHS may be sued under § 1983 is a legal question that additional discovery will not resolve. The question of whether the claim as applied to the named Defendants would be barred by the statute of limitations also appears to be a legal question under the circumstances of this case. The issue of qualified immunity, however, is tied to the facts of the given case and when considering qualified immunity "[w]here disputed facts exist," a court "assum[es] that the version of the material facts asserted by the non-moving party is correct." *Maxwell v. County of San Diego*, 708 F.3d 1075, 1081 (9th Cir. 2013) (quoting *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001)). The parties appear to dispute many of the underlying facts, and it is too soon for the Court to know what facts may be relevant to Defendants' qualified immunity defense, if the Court ultimately reaches this issue. Thus, additional discovery

---

[7] Defendants note that claims made under § 1983 are subject to a two-year statute of limitations in Oregon.

may be relevant to Plaintiff's response to this affirmative defense. As with Plaintiff's due process claim, Defendants have not specifically shown undue burden in responding to Plaintiff's requests for production relating to her First Amendment claim sufficient to support staying this potentially relevant discovery.

### 3. Plaintiff's CAPTA Claim

Plaintiff brings a CAPTA claim, alleging that ODHS violated federal statutes related to the certification and expenditure of CAPTA funds. Defendants argue that CAPTA does not explicitly or implicitly authorize a private right of action. The issue of whether a statute explicitly provides for a private cause of action may be resolved by looking at the text of the statute. The issue of whether a statute implicitly provides for a private right of action does not turn on additional discovery regarding the particular facts of a case. *See Cort v. Ash*, 422 U.S. 66, 78 (1975) (listing the four relevant factors in deciding whether a statute implicitly provides a private right of action); *see also Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15 (1979) ("The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction."). Further discovery responsive to Plaintiff's requests for production would not clarify whether CAPTA authorizes an explicit or implicit right to sue.

### 4. Conclusion

The Court grants Defendants' motion in part. The Court stays discovery, except targeted discovery relevant to Plaintiff's due process claim and assertion that the process she was provided was inadequate or the investigation was a sham, and Defendants' affirmative defense of qualified immunity.

### E.  Plaintiff's Motion to Stay Summary Judgment Pending Discovery

Plaintiff moves to stay the resolution of summary judgment pending additional discovery. Under Rule 56(d) of the Federal Rules of Civil Procedure, a court may defer considering a motion for summary judgment or may allow time for a nonmovant to take additional discovery if a nonmovant shows by affidavit or declaration that, "for specified reasons, [she] cannot present facts essential to justify [her] opposition." The discovery that Plaintiff requests in her motion to stay discovery and its accompanying declaration involve, among others, the merits of her procedural due process claim and documents relating to Defendants' qualified immunity affirmative defense. For the reasons discussed above, the Court agrees with Plaintiff that additional discovery may result in evidence relevant to Plaintiff's ability to respond to Defendants' motion for summary judgment.

Specifically, Plaintiff may need additional discovery to respond to Defendants' motion for summary judgment on Plaintiff's due process claim, unless Defendants withdraw without prejudice at this time their alternative argument on the merits about the process provided.[8] Similarly, Plaintiff may need additional discovery to respond to Defendants' motion with respect to Plaintiff's First Amendment claim, because Defendants assert qualified immunity against that claim, unless Defendants withdraw at this time their argument asserting qualified immunity. The Court thus grants Plaintiff's motion to stay. If Defendants withdraw those two arguments, then the Court would deny Plaintiff's motion and modify the final briefing schedule for Defendants' motion for summary judgment.

---

[8] There currently is no case schedule. If this case survives the current summary judgment motion, when a new case schedule is entered, Defendants may file subsequent motion(s) for summary judgment.

**F.  Plaintiff's Motion for Leave to File an Amended Complaint**

Plaintiff moves for leave to amend following the completion of discovery. In her motion, Plaintiff asserts that evidence is likely to come to light during discovery that will provide "ample evidence of malicious actions" by ODHS caseworkers. Specifically, she argues that communications between ODHS caseworkers—such as text messages and photographs—will show that these caseworkers lied, omitted critical information, and otherwise did not take Plaintiff's reports of child abuse seriously. Plaintiff states that she may increase her claim for damages, but explains that the "amount is unknown, as well as the additional allegations and claims to be presented."

Plaintiff further states that after discovery she will file a motion under Rule 15 of the Federal Rules of Civil Procedure that complies with Local Rule 15-1(b) and includes a copy of the proposed second amended complaint with changes delineated. Plaintiff explains that at this time it "would not be efficient" to file a motion with a proposed amended complaint because she does not yet have the evidence and facts to amend the complaint.

Plaintiff's motion is premature. At this stage, by her own admission, Plaintiff does not know what, if any, additional facts or claims she would present in an amended complaint. Plaintiff presumes that she will obtain new evidence and then she will file a motion to amend that will comply with the local rules and will attach a copy of the proposed second amended complaint with changes delineated. *See* Local Rule 15-1(b). The Court would then analyze that motion on its merits. At *this* time, however, Plaintiff does not have a proposed second amended complaint and is merely seeking an advisory opinion about whether she can have leave to amend at some point in the future when she has obtained the new evidence that she believes she will obtain. Her motion is not a proper motion for leave to amend. The Court declines to speculate about the propriety of a hypothetical amended complaint or whether Plaintiff may be able to

PAGE 20 – OPINION AND ORDER

obtain leave to file an amended complaint in the future. If at some point after additional

discovery Plaintiff believes she has new facts sufficient to seek leave to amend, she must move

for leave to amend in compliance with the federal and local rules, including Local Rule 15-1(b).

## CONCLUSION

The Court GRANTS *nunc pro tunc* Plaintiff's motion to file a reply to her motion to

compel, ECF 93. The Court DENIES Plaintiff's motion for sanctions, ECF 81. The Court

DENIES Defendants' motion to show cause, ECF 74. The Court DENIES without prejudice

Plaintiff's motion for leave to file an amended complaint, ECF 101. The Court GRANTS IN

PART AND DENIES IN PART Defendants' Motion to Stay Discovery, ECF 69. The Court

GRANTS Plaintiff's Motion to Stay Summary Judgment Proceedings Pending Discovery,

ECF 79. The Court grants Plaintiff a limited period of discovery, which will extend not later than

April 18, 2025. Plaintiff must file her response to Defendants' motion for summary judgment not

later than May 16, 2025. The Court DENIES Plaintiff's motion to compel, ECF 64, with respect

to her request to use unredacted Assessment Summaries. The Court further DENIES Plaintiff's

motion to compel, ECF 64, with respect to her Request Nos. 3, 8, 10, 11, and 12. The Court

defers ruling on Plaintiff's motion with respect to Request No. 14. Defendants shall file a

supplemental brief within two weeks from the date of this Order explaining their compliance

with Request No. 14. Plaintiff may file a response within one week of Defendants' filing.

**IT IS SO ORDERED.**

DATED this 24th day of January, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge