## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KIMBERLY M. SCHOENE**, | Case No. 3:23-cv-742-SI |
| Plaintiff, | **AMENDED OPINION AND ORDER** |
| v. | |
| **OREGON DEPARTMENT OF HUMAN SERVICES**, *et al.*, | |
| Defendants. | |

Kimberly M. Schoene, *pro se*.

David Hall, OREGON DEPARTMENT OF JUSTICE, 100 SW Market Street, Portland, OR 97201. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Kimberly Schoene, representing herself, sued Defendants, alleging that Defendants targeted and traumatized her after she reported to the Oregon Department of Human Services ("ODHS") evidence of physical harm allegedly done to the three-year-old son of her former romantic partner. In her original Complaint, Schoene alleged six claims, consisting of two violations of federal law and four violations of state law.[1] ECF 1. Schoene later filed her First

_____

[1] Schoene alleged constitutional claims under 42 U.S.C. § 1983 for (1) violation of her due process rights under the Fifth and Fourteenth Amendments; and (2) violation of her free speech rights under the First Amendment. She alleged state law claims for (1) intentional

Amended Complaint ("FAC"), ECF 15, which is the operative pleading. In her FAC, she asserts eight claims against Defendants. As her federal claims, Schoene alleges: (1) deprivation of her due process rights under the Fifth and Fourteenth Amendments, actionable pursuant to 42 U.S.C. § 1983; (2) deprivation of her free speech rights under the First Amendments, also pursuant to § 1983; and (3) violation of the Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. § 5101, *et seq*. As her state law claims, Schoene alleges: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) negligence; (4) negligence per se; and (5) violation of certain state statutory duties.

Defendants have moved for summary judgment against all claims. ECF 66. Schoene responded to some but not all of Defendants' arguments. ECF 119. Schoene also moved for leave to file a Second Amended Complaint. ECF 115. For the reasons explained below, the Court grants Defendants' motion for summary judgment and denies Schoene's motion for leave to file a Second Amended Complaint.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. v.*

_____

infliction of emotional distress; (2) negligent infliction of emotional distress; (3) negligence; and (4) negligence per se.

*Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex*, 477 U.S. at 325)). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

The Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson*, 477 U.S. at 252, 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). The Ninth Circuit further instructs that "an ordinary *pro se* litigant, like other litigants,

must comply strictly with the summary judgment rules." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)

Finally, a court may not grant summary judgment by default. *See Heinemann v. Satterberg*, 731 F.3d 914, 916-17 (9th Cir. 2013). When a party fails to respond to a fact asserted by the movant, a court may:

> (1) give [the party] an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). This rule was amended in 2010 to incorporate the "deemed admitted" practice of many courts—where a party fails to respond to an asserted fact, that fact may be "deemed admitted" (considered as undisputed). *Heinemann*, 731 F.3d at 917. Considering a fact as undisputed, however, does not mean that summary judgment automatically may be granted. A court must still determine, considering the facts the court has found undisputed for want of a response, the legal consequences and proper inferences to be drawn from those facts. *Id.* (quoting Fed. R. Civ. P. 56 Advisory Committee Notes (2010)).

## BACKGROUND[2]

L.A. ("Child") is a minor who resided at all relevant times in the State of Oregon. Schoene is not Child's biological parent and never was Child's legal guardian.

Child's biological parents are no longer together. Child's biological father ("Biological Father") previously was in a romantic relationship with Schoene. Schoene asserts that she was Child's primary caregiver from the time that the Child was about two years old until he was about

---

[2] As discussed below, Defendants' summary judgment motion turns primarily on questions of law, not questions of fact.

four. *See* Decl. of Kimberly Schoene ("Schoene Decl.") (ECF 120) ¶ 39.[3] Because this issue is not material to the Court's ruling, the Court makes no factual finding on this point. Child, however, would often spend time with his biological mother ("Biological Mother") during this time. *See, e.g.*, ECF 67 at 3, 10.

Beginning in early 2019, Schoene made multiple reports of child abuse to ODHS. *Id.* at 3. Schoene began photographing, interviewing, and videotaping Child when he returned from a visit with Biological Mother with what Schoene believed to be suspicious injuries on Child's body. *Id.* Schoene also began taking Child to doctors to have his injuries examined. *Id.* Although ODHS reviewed these allegations, ODHS ultimately determined that they were "unfounded." *Id.* By October 2020, medical providers that partnered with ODHS "found that [Schoene's] continued reporting, photographing, and interviewing of [Child] regarding alleged abuse that was never substantiated by either ODHS or a medical provider were threatening the child with emotional harm." *Id.* at 3-4.

During a hearing held on October 26, 2020, Biological Mother was awarded full custody of Child. *Id.* at 22. The next day, October 27, 2020, ODHS received a call made to its Child Abuse Hotline regarding the possibility that Child—then three years old—was the victim of physical abuse by an unknown perpetrator. *Id.* at 2. On October 29, 2020, ODHS received a call reporting that Schoene had caused Child mental injury. *See id.* at 9.

ODHS employee Saul Vences and his colleagues—including several of the named Defendants—investigated the allegations of abuse. From October 2020 through March 2021, ODHS staff investigated Schoene, Biological Father, and Biological Mother. *See id.* at 4-6.

---

[3] Schoene appears to have ceased having contact with Child by about December 2020. *See id.* ¶ 91 ("I had already removed myself from the situation in December 2020). Schoene and Biological Father appear to have ended their relationship in 2021. *Id.* ¶ 86.

During this investigation, Vences spoke with a medical provider who examined Child. *Id.* at 4. The medical provider also reviewed Child's case and determined "there was concern for mental injury and emotional distress to [Child] as a result of Ms. Schoene's behavior." *Id.* at 5. Throughout the investigation, Vences spoke with and wrote to Biological Father, advising him to ensure that Child did not have contact with Schoene while the investigation continued. *Id.* at 4-6.

In March 2021, Vences determined that there was "reasonable cause to believe" that Schoene caused Child "mental injury." *See* ECF 120 at 26. ODHS mailed Schoene a letter, dated May 10, 2021, to notify her of this finding. *Id.* at 26-27. Schoene appealed this finding to a local office of ODHS ("Local Office"). *See id.* at 28. The Local Office conducted a review and upheld Vences's finding. *Id.* The Local Office notified Schoene of its decision in a letter dated July 22, 2021. *Id.* Schoene then appealed the Local Office's decision to ODHS's Central Office. *See id.* at 29.

On January 19, 2022, the Central Office notified Schoene by letter that it had overturned the finding of "mental injury" and concluded there was reasonable cause to find that Schoene was responsible for a "threat of harm" to Child. *Id.* Schoene appealed this decision to the Central Office, prompting another round of review. *See id.* at 30. In May 2022, the Central Office upheld its previous finding. *Id.* Schoene then filed a petition for judicial review in Washington County Circuit Court, challenging the Central Office's final decision. The case was dismissed with prejudice on July 24, 2024. *See* General Judgment of Dismissal, *Schoene v. Or. Dep't of Hum. Servs.*, No. 22-cv-16664 (Or. Cir. July 24, 2024).

Schoene filed this lawsuit in May 2023. In addition to the allegations stated above, Schoene asserts that Defendants intentionally destroyed documents and altered dates pertinent to

the investigation against Schoene for the purpose of excluding Schoene from Child's life.
Schoene Decl. ¶¶ 7-11. She seeks $1,430,000 in money damages. ECF 15 ¶¶ 619-28.

## DISCUSSION

### A.  Due Process Claim

Schoene asserts a procedural due process claim under the Fourteenth Amendment. She
contends that Defendants violated her rights to a fair investigation comporting with due process.
Defendants' response is that Schoene did not allege in the FAC any violation of a legally
protected property or liberty under the U.S. Constitution to which she would be entitled to relief.
The Court agrees that Schoene has not stated in the FAC a legally protected liberty or property
interest cognizable under the Due Process Clause. Instead, her allegations—such as allegations
about discovery violations and evidence tampering—go to the *sufficiency* of the legal process that
she received. A plaintiff, however, must first show a constitutionally protected liberty or property
interest to prevail on a procedural due process claim. *See, e.g.*, *Shanks v. Dressel*, 540 F.3d 1082,
1090 (9th Cir. 2008).

Although Schoene does not state a liberty or property interest in the FAC, she does
discuss what she says in her response to Defendants' summary judgment motion is a liberty
interest. She argues that Defendants violated her liberty interest in her "ability to participate in the
juvenile case for [Child], or otherwise have any rights as a person with a 'caregiver relationship'
under [the Oregon child abuse reporting statutes]." *See* ECF 119 at 50. But even acknowledging
Schoene's *pro se* status, a response to summary judgment is not the time to amend pleadings or
raise new claims. *See, e.g.*, *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
624 F.3d 1083, 1089 (9th Cir. 2010) (stating that the plaintiff "may not effectively amend its
Complaint by raising a new theory of standing in its response to a motion for summary
judgment"); *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (stating that

when allegations are not in the complaint, "raising such claim in a summary judgment motion is insufficient to present the claim to the district court" (*overruled in part on other grounds by Apache Stronghold v. United States*, 101 F.4th 1036 (9th Cir. 2024)); *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990))); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (explaining that "an ordinary *pro se* litigant, like other litigants, must comply strictly with the summary judgment rules"). The Court does not accept Schoene's asserted liberty interest as articulated in her response to Defendants' motion for summary judgment. Accordingly, the Court grants Defendants' motion for summary judgment with respect to this claim.[4]

## B. First Amendment Claim

Schoene alleges that ODHS threatened Biological Father that ODHS would remove Child from his care if Schoene "continued to speak out concerning the child abuse and the lack of prevention of the abuse by Defendant DHS." ECF 15 ¶ 518. In her FAC, Schoene asserts this claim only against ODHS, and not any named Defendants. Thus, her claim is foreclosed by the doctrine of state sovereign immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) (holding that "a State is not a person within the meaning of § 1983"); *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) ("States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes are not 'persons' under § 1983." (quotation marks

---

[4] Even if the Court were to accept that Schoene asserts a liberty interest in her caregiver status, Schoene's claim would still not survive summary judgment. Schoene is not and never was Child's parent, stepparent, or legal guardian. Schoene has not provided, and the Court has not found, any legal authority for the proposition that a person has a constitutionally protected liberty interest—for purposes of a procedural due process claim—in attending or participating in judicial proceedings involving a child with whom that person has a relationship merely as a "caregiver."

omitted)). Accordingly, the Court grants Defendants' motion for summary judgment with respect to this claim.

## C. CAPTA Claim

Schoene asserts a claim under CAPTA, alleging that ODHS violated certain federal statutes related to the certification and expenditure of CAPTA funds. Defendants argue that CAPTA does not authorize, either explicitly or implicitly, a private right of action. Although Schoene did not respond to this argument, the Court still examines whether Schoene has a right to sue under CAPTA. *See Heinemann*, 731 F.3d at 917.

Schoene alleged that ODHS violated CAPTA by failing to perform "particular actions to be in compliance with CAPTA," such as failing adequately to train and supervise ODHS staff, failing properly to investigate allegations of child abuse, and failing to advise Schoene of her own legal rights during DHS's investigation of her. *See* ECF 15 ¶¶ 609, 611. The text of CAPTA, however, does not explicitly authorize a private plaintiff to bring a cause of action to enforce a state department's obligations under the statute. *See Doe ex rel. Fein v. District of Columbia*, 93 F.3d 861, 865 (D.C. Cir. 1996).

Nor does it appear that Schoene may use § 1983 to enforce CAPTA. "For a statutory provision to be privately enforceable, . . . it must create an individual right." *Henry A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012) (noting the difference between a federal *right* and a violation of federal *law*). In *Blessing v. Freestone*, 520 U.S. 329 (1997), the Supreme Court created a three-part test to determine whether a federal statute creates an individual right enforceable by § 1983. "The *Blessing* test requires 1) that Congress intended the statutory provision to benefit the plaintiff; 2) that the asserted right is not so 'vague and amorphous' that its enforcement would strain judicial competence; and 3) that the provision couch the asserted right

in mandatory rather than precatory terms." *Watson v. Weeks,* 436 F.3d 1152, 1158 (9th Cir. 2006) (citing *Blessing*, 520 U.S. at 340-41).

Schoene's claim does not meet the first factor under the *Blessing* test. Based on the Court's review of the legislative history of this statute, there is nothing to suggest that Congress intended CAPTA to benefit someone in Schoene's position. Schoene does not bring this lawsuit as a child—or the parent of a child—experiencing abuse. Rather, she brings this lawsuit as the target of a child abuse *investigation*. Beyond the protection of child abuse victims, CAPTA's purpose appears to be "to ensure that States are responsible for planning and implementing the essential elements of an effective and efficient child protective services system without placing undue administrative burdens on States." *See* S. REP. 104-117 at *14 (1995). Thus, the Court does not read CAPTA to have authorized a private right of action available to Schoene.

This conclusion is supported by case law from the Ninth Circuit and the D.C. Circuit. In *Henry A.*, the Ninth Circuit relied on the same Senate report to conclude that the guardian ad litem provisions of CAPTA did not create privately enforceable rights under § 1983. *Henry A.*, 678 F.3d at 1011. The Ninth Circuit explained that "CAPTA's requirements have too broad a focus to create individual, enforceable rights" and that "Congress intended to focus on the aggregate or systemwide policies of a regulated entity, rather than individual rights to benefits." *Id.* at 1010-11 (cleaned up).

Further, in *Doe*, the D.C. Circuit held that CAPTA "created neither a private right of action nor an enforceable right under § 1983." *Doe*, 93 F.3d at 865. The D.C. Circuit relied on the Supreme Court's reasoning in *Suter v. Artist M.*, 503 U.S. 347 (1992), where the Supreme Court analyzed the Adoption Act,[5] "which contains language remarkably similar to CAPTA," and

---

[5] The Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 620 *et seq.*

concluded that the Adoption Act "imposed only generalized duties on the states." *Id.* at 865-66.

The *Doe* court explained that "[l]ike CAPTA, the Adoption Act establishes federal funding for

states provided that the states comply with the requirements delineated in the statute," *id.* at 866,

and that CAPTA also "failed to create an enforceable right," *see id.* at 866. Based on its own

analysis and persuasive (and possibly binding) legal authority, the Court concludes that Schoene

may not bring a private right of action under this statute. Accordingly, the Court grants

Defendants' motion for summary judgment with respect to this claim.

## D.  Remaining State-Law Claims

Because the Court grants summary judgment for Defendants on Schoene's claims arising

under federal law, the only claims remaining are Schoene's state-law claims. Under 28 U.S.C.

§ 1367(c), a district court "may decline to exercise supplemental jurisdiction over a claim . . .

if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.

§ 1367(c)(3). A district court's exercise of discretion in these circumstances "is informed by

whether declining jurisdiction comports with the underlying objective of most sensibly

accommodating the values of economy, convenience, fairness, and comity." *O'Connor v.*

*Nevada*, 27 F.3d 357, 363 (9th Cir. 1994) (cleaned up). "In the usual case in which federal-law

claims are eliminated before trial, the balance of factors will point toward declining to exercise

jurisdiction over the remaining state law claims." *Gini v. Las Vegas Metro. Police Dep't*, 40

F.3d 1041, 1046 (9th Cir. 1994) (cleaned up) (emphasis omitted). Accordingly, the Court declines

to grant supplemental jurisdiction to Schoene's remaining state-law claims.

## E.  Plaintiff's Motion to Amend

On November 20, 2024, while several discovery motions were pending, Schoene filed a

motion to amend her FAC, ECF 101. In that motion and supporting declaration, Schoene asserted

that evidence would likely come to light during discovery that would provide "ample evidence of

malicious actions" by ODHS caseworkers. Schoene stated that she would potentially increase her claim for damages but explained that the "amount is unknown, as well as the additional allegations and claims to be presented." In its Opinion and Order dated January 24, 2025, ECF 105, the Court explained that Schoene's motion was premature and that, by her own admission, she did not yet know what additional facts or claims she would present in a further amended complaint. The Court explained to Schoene that she could move for leave to amend *after* she believed that she had new facts sufficient to seek leave to amend.

On February 24, 2025, Schoene filed her Motion for Leave to File Second Amended Complaint (ECF 115) with her attached proposed Second Amended Complaint. ECF 115-1. Defendants oppose this motion. For the reasons that follow, the Court denies Schoene's motion for leave further to amend.

### 1. Standards

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the "court should freely give leave [to amend a pleading] when justice so requires." A district court should apply Rule 15's "policy of favoring amendments . . . with extreme liberality." *Price v. Kramer*, 200 F.3d 1237, 1250 (9th Cir. 2000) (quotation marks omitted). The purpose of the rule "is 'to facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (quoting *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir. 2011)). A district court, however, may, within its discretion, deny a motion to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (alteration in original) (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)).

"Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Futility of amendment, however, "can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Generally, however, "[a]bsent prejudice, or a strong showing of any of the remaining [four] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Cap.*, 316 F.3d at 1052 (alterations added, emphasis in original). When weighing the factors, all inferences should be made in favor of granting the motion to amend. *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

Leave to amend may be denied if the proposed amendment is futile or would be subject to immediate dismissal. *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). An amendment is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997)). If the underlying facts or circumstances possibly could "be a proper subject of relief, [a plaintiff] ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The standard for assessing whether a proposed amendment is futile therefore is the same as the standard imposed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see, e.g.*, *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), although "viewed through the lens of the requirement that courts freely give leave to amend when justice so requires." *Barber v. Select Rehab.*, *LLC*, 2019 WL 2028519, at *1 (D. Or. May 8, 2019) (quotation marks omitted).

## 2.  Use of Artificial Intelligence

Before addressing the merits of Schoene's motion, the Court notes that Schoene cited

several cases in her reply brief to support her motion to amend, including *Butler v. Oregon*, 218

Or. App. 114 (2008), *Curry v. Actavis, Inc.*, 2017 LEXIS 139126 (D. Or. Aug. 30, 2017), *Estate

of Riddell v. City of Portland*, 194 Or. App. 227 (2004), *Hampton v. City of Oregon City*, 251 Or.

App. 206 (2012), and *State v. Burris*, 107 Or. App. 542 (1991). These cases, however, do not

exist. Schoene's false citations appear to be hallmarks of an artificial intelligence ("AI") tool,

such as ChatGPT. It is now well known that AI tools "hallucinate" fake cases. *See Kruse v.

Karlen*, 692 S.W.3d 43, 52 (Mo. Ct. App. 2024) (noting, in February 2024, that the issue of

fictitious cases being submitted to courts had gained "national attention").[6] In addition, the Court

notes that a basic internet search seeking guidance on whether it is advisable to use AI tools to

conduct legal research or draft legal briefs will explain that any legal authorities or legal analysis

generated by AI needs to be verified. The Court cautions Schoene that she must verify the

accuracy of any future citations she may include in briefing before this Court and other courts.

## 3.  Discussion

Schoene's proposed amendments do not cure the defects addressed in this Opinion and

Order with respect to two of her three federal law claims. First, with respect to her due process

claim, her proposed Second Amended Complaint still does not state a constitutionally protected

liberty interest. Second, her proposed amended allegations regarding CAPTA are identical to

---

[6] *See also, e.g.*, Benjamin Weiser, *Here's What Happens When Your Lawyer Uses ChatGPT*, N.Y. Times (May 27, 2023); Larry Neumeister, *Lawyers Submitted Bogus Case Law Created by ChatGPT. A Judge Fined Them $5,000*, Associated Press (June 22, 2023); Erin Mulvaney, *Judge Sanctions Lawyers Who Filed Fake ChatGPT Legal Research*, Wall St. J. (June 22, 2023); LegalEagle, *How to Use ChatGPT to Ruin Your Legal Career*, YouTube.com (June 10, 2023), https://www.youtube.com/watch?v=oqSYljRYDEM.

those in her FAC, except for one nonmaterial change to the phrasing of the heading of that section. *Compare* Proposed Second Amended Complaint ¶¶ 606-618, *with* FAC ¶¶ 606-618. Accordingly, adopting the proposed amendments would be futile regarding these claims.

The Court next turns to Schoene's First Amendment Claim. To the extent that the proposed amendments still allege a claim against ODHS, the proposed amendments would be futile because they would still fail under the sovereign immunity doctrine, as discussed above. Schoene, however, now proposes to assert claims against the named individual Defendants, alleging that they "made threats to [Biological Father] that Defendant DHS would remove Child from [Biological Father's] care if Plaintiff continued to speak out concerning the child abuse and lack of prevention of the abuse by Defendant DHS." Proposed Second Amended Complaint ¶ 518. Reading this allegation in a light most favorable to Schoene, her allegation against the named individual Defendants *might* state a cognizable First Amendment retaliation claim. *See Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006) (listing elements of a retaliation claim).

Nevertheless, the Court denies Schoene's motion to amend this claim. Aside from changing the heading of her claim to include the named individual Defendants, the allegations in the proposed amendments with respect to First Amendment retaliation are identical to the allegations in the operative FAC.[7] Further, unlike her due process claim and her proposed spoliation and negligence claims, none of the discovery or closure regarding discovery that occurred between October 7, 2024 (when Defendants moved for summary judgment), and

---

[7] Although Schoene added as the last sentence of this proposed amended claim that "[t]he allegations in the First Claim for Relief are incorporated into this claim for relief," nothing in her First Claim for Relief relates to or discusses the alleged threats to Biological Father made by any of the individual Defendants.

February 24, 2025 (when Schoene moved to amend) relate to her First Amendment claim. Thus, Schoene could have filed a motion to amend her complaint with respect to this claim earlier, including before Defendants moved for summary judgment. Instead, Schoene chose to move to amend this claim only *after* Defendants moved for summary judgment. The Court observes that her proposed changes to this claim solely and squarely address the sovereign immunity defect that Defendants noted in their motion for summary judgment. But to allow Schoene to amend her First Amendment claim at this stage—after nearly two years of discovery—would permit Schoene to proceed despite undue delay and would unduly prejudice Defendants. As discussed, the issue of prejudice "carries the greatest weight" in the analysis. *See Eminence Cap., LLC*, 316 F.3d at 1052. Therefore, the Court denies Schoene's motion to amend with respect to this claim.

Finally, because the Court has now denied Schoene's motion to amend her federal claims and granted summary judgment on those claims, it declines to consider the merits of any proposed amendments to her state-law claims.

## CONCLUSION

The Court GRANTS Defendants' motion for summary judgment, ECF 66, with respect to Schoene's federal-law claims and DECLINES to exercise supplemental jurisdiction over her state-law claims. The Court DENIES Schoene's motion to amend her FAC, ECF 115.

**IT IS SO ORDERED**.

DATED this 18th day of July, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 16 – AMENDED OPINION AND ORDER